# Illinois Official Reports

## Appellate Court

*In re Commitment of Haugen*, 2017 IL App (1st) 160649

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF KIRK HAUGEN (The People of the State of Illinois, Petitioner-Appellee, v. Kirk Haugen, Respondent-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-16-0649 |
| Filed | September 25, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-80014; the Hon. Alfredo Maldonado, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Office of Stephen F. Potts, of Des Plaines (Stephen F. Potts, of counsel), for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Drew Meyer, Assistant Attorneys General, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Simon and Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent-appellant, Kirk Haugen (respondent), who had previously been convicted of sexually violent offenses, was found to be a sexually violent person (SVP) and committed to the control and custody of the Illinois Department of Human Services. On appeal from his designation as a SVP, respondent argues (1) the State failed to prove he is a sexually violent person because the State did not show a substantial probability to reoffend, (2) the trial court erred in refusing to tender both his special interrogatories, thereby depriving him of an opportunity to test the jury's general verdict, and (3) the trial court erred in refusing to give his jury instruction that he could not be committed based on his prior criminal convictions alone.

¶ 2    For the following reasons, we find no errors with the trial below and affirm respondent's adjudication as a sexually violent person.

¶ 3                                    JURISDICTION

¶ 4    On August 20, 2010, the circuit court of Cook County found probable cause to detain respondent pursuant to the Sexually Violent Persons Commitment Act. 725 ILCS 207/1 *et seq.* (West 2010). On November 2, 2015, a jury found respondent to be a sexually violent person. On February 5, 2016, the trial court denied respondent's motion for a new trial and ordered respondent committed to the custody and control of the Illinois Department of Human Services. Respondent filed his notice of appeal on February 19, 2016. Accordingly, this court has jurisdiction over this appeal pursuant to article VI, section 6 of the Illinois Constitution, and Illinois Supreme Court Rules 301 and 303. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 5                                    BACKGROUND

¶ 6    On August 9, 2010, the State petitioned the Cook County circuit court to have respondent committed as a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2010)). The petition included certificates of respondent's 1991, 1994, and 2005 Cook County convictions for aggravated criminal sexual abuse. The petition also included an evaluation prepared by Dr. John Arroyo, Psy.D (Dr. Arroyo). Dr. Arroyo diagnosed respondent with (1) "paraphilia, not otherwise specified non-consent" and (2) "personality disorder not otherwise specified with antisocial features." Dr. Arroyo observed that respondent had a "long history" of sexually assaulting boys, "reoffended while under community supervision," and "failed to accept responsibility" for his crimes. Based on the results of various actuarial instruments, Dr. Arroyo concluded respondent "is a substantial and continuing risk for sexual offense recidivism." Accordingly, he recommended that respondent be considered a SVP and civilly committed.

¶ 7    At trial, the State called Dr. Arroyo to testify on its behalf, and he was admitted as an expert in "sex-offender evaluations and/or risk assessment." Dr. Arroyo opined that respondent met all the criteria to be considered a SVP. In reaching this conclusion, Dr. Arroyo considered a variety of data, including respondent's extensive criminal history. Between the ages of 24 and 39, respondent had been convicted of 28 sexually violent offenses against children between 7 and 14 years old. Dr. Arroyo testified that in several of those cases respondent had threatened to kill the victim if he reported the crime. While on bond pending eight separate

- 2 -

aggravated-criminal sexual abuse cases, respondent committed yet another sexual offense, of which he was later convicted. After being released from prison for his initial crimes, respondent forced his way into a 14-year-old boy's home and sexually assaulted him despite the boy's protestations and attempts to escape. Dr. Arroyo stated that these crimes demonstrated respondent's lack of self-control, even under supervision. Dr. Arroyo testified that, during his interview with respondent, respondent denied having committed any of his crimes despite having pled guilty to them. Dr. Arroyo concluded that respondent's failure to acknowledge his crimes indicated he was more likely to reoffend.

¶ 8    Dr. Arroyo also considered the results of two actuarial risk-assessment tests, which indicate the probability of a sex offender's recidivism based on known risk factors. Respondent's score on the Static-99R test indicated that he posed a high risk to reoffend. Respondent's score on the HARE psychopathy checklist was low, which Dr. Arroyo testified was common among child molesters.

¶ 9    Dr. Arroyo issued two reports in this case: one in 2010 and one in 2015. In his 2010 report, using the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), Dr. Arroyo diagnosed respondent with "(1) paraphilia not otherwise specified non-consent" and "(2) other personality disorder not otherwise specified with antisocial features." In his 2015 report using the Diagnostic and Statistical Manual of Mental Disorders—Fifth Edition (DSM-5), Dr. Arroyo diagnosed respondent with (1) "pedophilic disorder nonexclusive type…sexual interest males," (2) "other specified paraphilic disorder, sexual interest in non-consenting partners," and (3) "other specified personality disorder with antisocial features." A penile plethysmograph test that respondent took between 2010 and 2015 showing his sexual interest in young boys convinced Dr. Arroyo to diagnose respondent with pedophilic disorder in addition to sexual interest in non-consenting partners.

¶ 10    Dr. Arroyo concluded, to a reasonable degree of psychological certainty, that respondent met all SVP criteria. He found that respondent was "substantially probable" to reoffend.

¶ 11    On cross-examination, Dr. Arroyo acknowledged some inconsistency in his diagnosis from 2010 to 2015. He acknowledged that in his original report he did not diagnose respondent with pedophilia and admitted there was no diagnostic reason for not making this diagnosis. Dr. Arroyo could not define how he determined respondent was aroused by nonconsenting sex and why that was different from his pedophilic desires. Dr. Arroyo admitted that respondent had no arousal on the penile plethysmograph to nonconsenting sex. He also admitted that respondent's personality disorder did not predispose him to sexual violence. Finally, he acknowledged that it was unclear how the dynamic risk factors contributed to respondent's overall risk for sexual violence.

¶ 12    The State also called Dr. Kimberly Weitl (Dr. Weitl) to testify against respondent, and she was admitted as an expert in SVP evaluation, diagnosis, and risk assessment. She also concluded that respondent met all the SVP criteria. Dr. Weitl prepared evaluations of respondent in 2010, 2011, and 2015. After each evaluation, she concluded respondent met all SVP criteria. Like Dr. Arroyo, Dr. Weitl relied on a variety of information, including respondent's criminal history. Dr. Weitl concluded that respondent was unable to manage his criminally sexual behavior, even under supervision. According to Dr. Weitl, respondent's inability to "manage his sexual deviance" was also evident because "[h]e molests children in public places where there is high chance of getting caught" and "molests strangers" who might

report him. Dr. Weitl also found respondent's refusal to admit his crimes indicative of his persistent dangerousness.

¶ 13 In 2010 and 2011, using the DSM-IV, Dr. Weitl diagnosed respondent with pedophilia. In 2015, using the DSM-5, she diagnosed respondent with "pedophilic disorder non-exclusive type in a controlled environment." The three actuarial tests she utilized—Static-99, Static-99R, and Static 2002R—indicated that respondent was at "high risk" to reoffend. Based upon all the information available to her, Dr. Weitl concluded respondent was "substantially probable to reoffend" and met all the SVP criteria.

¶ 14 On cross-examination, Dr. Weitl conceded that respondent had been in the community between 1995 and 2005 without being arrested for any sex offenses. She did qualify this admission by saying that he may have avoided being caught. She acknowledged that, unlike Dr. Arroyo, she did not diagnose respondent with a personality disorder or other specified paraphilic disorder.

¶ 15 After the testimony of Dr. Arroyo and Dr. Weitl, the State rested. Respondent then moved for a directed verdict, which the trial court denied. Respondent did not put on any witnesses in his defense.

¶ 16 During the jury instruction conference, the State objected to an instruction proposed by respondent that stated, "[E]vidence that Respondent was convicted for or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient alone to establish beyond a reasonable doubt that the person has a mental disorder." The State argued that the proposed instruction would confuse the jury because it was repetitive of another instruction and phrased in a different manner. The trial court agreed with the State's reasoning and rejected its use.

¶ 17 The State also objected to respondent's two proposed special interrogatories. The first proposed interrogatory stated, "[w]e the jury find that the Respondent, Kirk Haugen, suffers from the mental disorder Pedophilic Disorder," and "[w]e the jury find that the Respondent, Kirk Haugen, suffers from the mental disorder Other Specified Paraphilic Disorder." The State argued that both interrogatories were improper and confusing. It reasoned that, because there is no obligation under the statute to prove any specific mental disorder, interrogatories asking the jury to find that respondent has specific disorders would impose an undue burden on the State. The State also argued the Act's mental disorder definition was contained in the jury instructions. The trial court agreed that the two proposed interrogatories would be confusing and rejected their use.

¶ 18 The jury found respondent to be a SVP, and the court entered judgment accordingly. Respondent moved for a new trial based on the trial court's failure to give his two proposed interrogatories and the State's failure to prove him a SVP beyond a reasonable doubt. After argument, the trial court denied respondent's motion for new trial. The trial court then ordered respondent committed to the custody and control of the Illinois Department of Human Services.

¶ 19 Respondent timely filed his notice of appeal.

¶ 20 ANALYSIS

¶ 21 Respondent raises three issues on appeal: (1) the State failed to prove he is a sexually violent person because it did not show a substantial probability to reoffend, (2) the trial court

erred in refusing to tender both his special interrogatories thereby depriving him of an opportunity to test the jury's general verdict, and (3) the trial court erred in refusing to give his jury instruction that he could not be committed based on his prior criminal convictions alone.

¶ 22　　In his first issue, respondent challenges the sufficiency of the evidence used to demonstrate his probability to reoffend. In order to commit an individual under the Act, the State must prove that respondent has been convicted of a sexually violent offense and suffers from a mental disorder that creates a substantial probability that he will engage in acts of sexual violence. 725 ILCS 207/15(b) (West 2014); *In re Detention of Hardin*, 238 Ill. 2d 33, 43 (2010). When a respondent challenges the sufficiency of the evidence supporting a SVP verdict, a reviewing court asks "only whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt." *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 598 (2007).

¶ 23　　Before this court, respondent argues that, in order to establish a substantial probability that he will engage in acts of sexual violence, the State must demonstrate that he has a recidivism rate in excess of 50%. Respondent cites no authority in support of his position.

¶ 24　　The Act requires that the State must prove beyond a reasonable doubt that respondent "suffers from a mental disorder that makes it substantially probable that [he] will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2014). Respondent admits that Illinois courts have defined " 'substantially probable' " to mean " 'much more likely than not.' " *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1086 (2000); *In re Commitment of Curtner*, 2012 IL App (4th) 110820, ¶ 37.

¶ 25　　Respondent's argument is without merit, as it seeks to invade an area reserved for the trier of fact. The argument merely attacks the weight to be given to certain evidence—the actuarial tests performed by expert witnesses. It is the province of the jury to evaluate the results of any testing along with the other evidence presented to determine whether he was "substantially probable" to reoffend. *In re Tittlebach*, 324 Ill. App. 3d 6, 11 (2001) (rejecting respondent's argument that the State must show a more than 10% recidivism rate as an improper attack on the weight to be given such evidence); *In re Detention of Welsh*, 393 Ill. App. 3d 431, 455-56 (2009) (rejecting respondent's challenge to conclusions drawn from actuarial testing as an improper attempt to invade an area reserved for the trier of fact). On appeal, this court will not reweigh the evidence or insert our opinion for that of the trier of fact. *People v. Smith*, 177 Ill. 2d 53, 73 (1997). Therefore, we reject his argument that the State must show a recidivism rate of 50%.

¶ 26　　Importantly, Dr. Arroyo and Dr. Weitl did not rely exclusively on the actuarial tests to conclude that respondent was substantially probable to reoffend. Dr. Arroyo testified that in his expert opinion respondent suffered from "pedophilic disorder nonexclusive type…sexual interest males," while Dr. Weitl diagnosed respondent with "pedophilic disorder non-exclusive type in a controlled environment." Both experts also testified to respondent's significant criminal history and the underlying behaviors which manifested themselves during those offenses. See *In re Detention of White*, 2016 IL App (1st) 151187, ¶ 59 (stating that experts are not prohibited from relying on respondent's actions during prior sexual offenses). Dr. Weitl concluded respondent had a substantial probability to reoffend based on his crimes taking place in public and against strangers who were more likely to report the crime. Finally, both doctors testified to respondent's failure to accept responsibility for the crimes, even though he pled guilty. It was the jury's responsibility to determine whether the actuarial tests along with

the other testimony demonstrated respondent had a substantial probability to reoffend, and in viewing the evidence in a light most favorable to the State, the evidence presented was sufficient.

¶ 27   In his second issue, respondent argues that the trial court erred in denying his request to submit his special interrogatories. Proceedings involving the adjudication of a sexually violent person are civil in nature and are therefore governed by the Illinois rules of civil procedure. 725 ILCS 207/20 (West 2014). The Code of Civil Procedure (Code) provides that juries render general verdicts unless the nature of the case requires otherwise. 735 ILCS 5/2-1108 (West 2014). The Code provides that any party may request a jury to make special findings upon any material question or questions of fact. *Id.*

¶ 28   The purpose of the special interrogatory is to test the jury's general verdict by submitting a question that relates to an ultimate issue of fact upon which the rights of the parties depend, and that has an answer potentially irreconcilable with the general verdict. *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002). "[A]n inconsistent special finding controls a general verdict as a matter of common law ***." *Zois v. Piniarski*, 107 Ill. App. 3d 651, 652 (1982). A response to a special interrogatory is inconsistent with a general verdict only where it is " 'clearly and absolutely irreconcilable with the general verdict.' " *Simmons*, 198 Ill. 2d at 555-56. Any interrogatory should ask a single question and not be misleading, confusing, or ambiguous. *Zois*, 107 Ill. App. 3d at 652. The trial court must submit the proposed special interrogatory to the jury, provided the proposing party submits a question in the proper form. *In re Detention of Hayes*, 2014 IL App (1st) 120364, ¶ 40. A trial court's decision on whether to give a special interrogatory is a question of law we review *de novo*. 735 ILCS 5/2-1108 (West 2014).

¶ 29   Respondent's special interrogatories stated: "[w]e the jury find that the Respondent, Kirk Haugen, suffers from the mental disorder Pedophilic Disorder" and "[w]e the jury find that the Respondent, Kirk Haugen, suffers from the mental disorder Other Specified Paraphilic Disorder." Before this court, he argues that they should have been given because if the jury answered no to both, he could not have been committed as a SVP. The State argues that the special interrogatories do not meet any of the necessary requirements and the trial court correctly rejected their use.

¶ 30   The trial court correctly declined their use because the interrogatories are codependent and therefore not in a proper form. Our case law is clear that a proper special interrogatory consists of a *single*, direct question that, *standing on its own*, is dispositive of an issue in the case such that it would, *independently*, control the verdict with respect thereto. *Zois*, 107 Ill. App. 3d at 652-53. As respondent admits in his brief, only an answer of "no" to both interrogatories would have been inconsistent with the general verdict. Accordingly, neither of these special interrogatories, standing on its own, was inconsistent with the general verdict or dispositive of the issue of whether respondent had the requisite mental disorder. See *Northern Trust Co. v. University of Chicago Hospitals & Clinics¸* 355 Ill. App. 3d 230, 251-53 (2004) (rejecting the use of interlinked special interrogatories). Since the two proposed special interrogatories were not in the proper form, the trial court did not err in rejecting their use.

¶ 31   In his last issue, respondent argues that the trial court erred in not tendering his jury instruction that he could not be committed based on his prior criminal convictions alone. The State argues that respondent forfeited this issue by failing to include it in his posttrial motion for a new trial. To preserve a claim for appeal, a litigant must raise it both in a timely objection and in a written posttrial motion. *People v. Kitch*, 239 Ill. 2d 452, 460 (2011). Otherwise, the

litigant forfeits the claim. *Id.* at 460-61. At the jury instruction conference, respondent proposed the following: "[e]vidence that the Respondent was convicted for or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient alone to establish beyond a reasonable doubt that the person has a mental disorder." After the trial court declined to give the instruction to the jury, respondent did not raise the issue again in his posttrial motion for a new trial. As a consequence, he has forfeited review of the claim and we decline to consider it.

¶ 32                                    CONCLUSION

¶ 33        For the foregoing reasons, we find no error with the proceedings below and affirm the jury's determination that respondent is a sexually violent person under the Act.

¶ 34        Affirmed.