2024 IL App (1st) 231678-U

No. 1-23-1678

December 24, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* COMMITMENT OF WHURRY BUMPERS, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 20 CR 80008 |
| v. | ) | |
| | ) | |
| Whurry Bumpers, | ) | Honorable |
| | ) | Peggy Chiampas, |
| Respondent-Appellant.) | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

ORDER

¶ 1   *Held*:   We affirm the civil commitment of respondent where sufficient evidence supported the jury's finding that he is a sexually violent person.

¶ 2   The circuit court committed respondent Whurry Bumpers to the custody of the Department of Human Services (DHS) after a jury found him to be a sexually violent person (SVP) pursuant

to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2020)). On appeal, respondent argues insufficient evidence proved he was an SVP. We affirm.

¶ 3    Respondent pled guilty to first degree murder after he strangled a woman in 1997.

¶ 4    In July 2020, the State petitioned to commit respondent as an SVP under the Act, alleging that respondent's mental disorders made it substantially probable that he would engage in acts of sexual violence. The circuit court found probable cause to believe respondent was an SVP and ordered DHS to hold him in custody pending trial.

¶ 5    At the May 2023 trial, the State entered into evidence a certified copy of respondent's conviction for the 1997 murder. The State presented two witnesses: Dr. John Arroyo and Dr. Amy Louck Davis, both experts in the field of clinical psychology and, specifically, the area of sexually violent person evaluation, diagnosis, and risk assessment.

¶ 6    Dr. Arroyo spoke to respondent and reviewed his medical, criminal, and disciplinary records as well as prior evaluations. Dr. Arroyo conducted his evaluation in 2020 and determined respondent met the criteria of an SVP. In 2023, he reviewed respondent's more recent records and updated his evaluation to account for the fact that respondent had turned 60 years old, which lowered his risk of reoffending. Dr. Arroyo opined that respondent continued to meet the criteria for commitment under the Act.

¶ 7    Dr. Arroyo testified that he considered the 1997 murder to be sexually motivated, explaining that respondent admitted to having sex with the victim before killing her, and evidence showed the victim's injuries were inconsistent with consensual sex. He reviewed respondent's criminal history, which included two cases from 1989 in which respondent pled guilty to criminal sexual assault, as well as unprosecuted charges of battery in 1988 and criminal sexual abuse in

1996 in which each victim reported respondent raped her. Dr. Arroyo also reviewed three cases from 1988, 1989, and 1997. In each, a woman had reported to police that respondent raped her, but the state's attorney declined to file charges. Respondent's nonsexual criminal history included a battery, possession of a controlled substance, and retail thefts.

¶ 8    Dr. Arroyo also reviewed respondent's disciplinary history. He testified that respondent had 30 disciplinary infractions during his incarceration following the 1989 conviction, but most were for minor offenses and none were sexual in nature. Respondent reported to Dr. Arroyo that he "did fail parole in the past" but "had he not been getting high he would have been more successful." Respondent had no disciplinary history from the time he arrived at DHS's treatment and detention facility in 2020.

¶ 9    Dr. Arroyo testified that respondent had a pattern of using violence or threats of violence against individuals who were unwilling to engage in sexual behavior with him in order to gain compliance. He diagnosed respondent with (1) a paraphilic disorder of sexual arousal to nonconsenting persons, (2) antisocial personality disorder, and (3) stimulant use disorder in remission in a controlled environment. Dr. Arroyo stated these diagnoses predisposed respondent to commit future acts of sexual violence and together qualified as a mental disorder under the Act. He noted that another professional had given respondent a fourth diagnosis of unspecified schizophrenia or other psychotic disorder.

¶ 10    Dr. Arroyo also conducted a risk assessment. He testified that on the Static-99R actuarial instrument, respondent's score was in the 80th percentile of sex offenders and indicated a 17.5% to 32.5% likelihood of being rearrested or reconvicted for another sexual offense in his lifetime. This meant respondent was twice as likely to reoffend as the average sex offender. Dr. Arroyo also

employed the Static-2002R instrument, which was more conservative and only considered offenses for which respondent had been sentenced. Respondent's score on the Static-2002R was in the 64th percentile and indicated an 18% to 28% likelihood of reoffending within 20 years. Dr. Arroyo testified that, taken together, these scores showed "significant risk." He emphasized that while the Act asked whether an individual would *engage* in future sexual offenses, these instruments only measured whether an individual was likely to be *charged or convicted* of sexual offenses. As such, they tended to underestimate risk.

¶ 11    Dr. Arroyo also considered "dynamic risk factors" that might increase or decrease an individual's risk from the baseline actuarial estimates. Based on the results of the Stable-2007 instrument, which assessed dynamic risk factors, Dr. Arroyo characterized respondent's risk as "moderate." Respondent's dynamic risk factors included difficulties with women in the past, lack of concern for others, impulsiveness, poor problem solving, sexual deviance, and lack of cooperation with supervision. As for protective factors, Dr. Arroyo stated the actuarial instruments already accounted for respondent's age, he had no medical issues, and he had declined to participate in a sex offender treatment program despite it being offered at least twice while in custody.

¶ 12    After completing his risk assessment, Dr. Arroyo concluded respondent was substantially probable to engage in further acts of sexual violence, meaning much more likely than not.

¶ 13    On cross-examination, Dr. Arroyo agreed that respondent's disciplinary record indicated he had never been sanctioned for drug use or acting inappropriately toward women while in custody. Dr. Arroyo also agreed that several mental health treatment notes from the Department of Corrections described respondent's impulse control as "good," and that respondent had told him

he had been in two past relationships, had once been married, and had a daughter with whom he maintained a relationship. Dr. Arroyo also confirmed that two mental health treatment plans from respondent's file indicated respondent had the ability to be introspective, to be self-aware, to see appropriate boundaries, to establish mature relationships, and to problem solve and manage emotions.

¶ 14    Dr. Louck Davis also reviewed respondent's records, although respondent declined to speak to her, and opined that respondent was substantially probable to reoffend and thus met the criteria of an SVP. She prepared her initial evaluation in 2020 and updated it in 2023.

¶ 15    Dr. Louck Davis testified that the 1997 murder was sexually motivated. She explained respondent had a pattern of "nonconsensual sexual activity that was in fact violent, forced sex." She reviewed respondent's criminal history, discussed above, and noted that respondent "was actually aroused by this process" in that "[h]e was able to progress through the nonconsenting violence that occurred during the sexual activity to the point of reaching sexual gratification." Dr. Louck Davis opined that this sexual deviance was a disorder that impaired respondent's control over himself and was expected to persist. She diagnosed respondent with paraphilic disorder, antisocial personality disorder, and substance use disorder, which she said in combination qualified as a mental disorder under the Act.

¶ 16    Dr. Louck Davis used the Static-99R and Static-2002R actuarial risk instruments to assess respondent's risk of reoffending. In her evaluation, respondent's scores showed above-average risk of reoffending on the Static-99R and average risk on the Static-2002R. Dr. Louck Davis also listed the following dynamic risk factors: deviant sexual interest, personality disorder, sexual preoccupation, sexualized violence, justifying sexual violence, general self-regulation problems,

poor problem solving, childhood criminality, history of nonsexual crime, substance abuse while offending, and noncompliance with supervision. She noted that noncompliance with supervision "is one of the highest correlated with future sexual offending," and that respondent had violated a condition of parole in the past. The only applicable protective factor was respondent's age, which the actuarial risk instruments already accounted for.

¶ 17 On cross-examination, Dr. Louck Davis acknowledged respondent had not been disciplined for any sexual offenses, violent behavior, or substance abuse while in custody. She also clarified that, to the best of her recollection, respondent's scores on the Static-99R and Static-2002R corresponded to approximately an 8% to 20% risk of reoffending over five years.

¶ 18 Although the circuit court had appointed an expert for respondent, he did not present any evidence at trial.

¶ 19 The jury found respondent was an SVP within the meaning of the Act. The circuit court denied his motion for a new trial and ordered him committed to DHS for institutional care. Respondent appealed, challenging the sufficiency of the evidence.

¶ 20 In reviewing the sufficiency of the evidence for a commitment under the Act, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could find the elements of a sexually violent person under the Act proved beyond a reasonable doubt. *In re Commitment of Fields*, 2014 IL 115542, ¶ 20. Those elements are (1) respondent was convicted of a sexually violent offense; (2) he has a mental disorder; and (3) that mental disorder makes it substantially probable he will engage in acts of sexual violence. *Id.* (citing 725 ILCS 207/5(f), 35(d) (West 2020)). Sexually motivated first degree murder is a "sexually violent offense" for purposes of the first element. 725 ILCS 207/5(e)(2) (West 2020). "Substantially

probable" as used in the Act means much more likely than not. *In re Commitment of Gavin*, 2019 IL App (1st) 180881, ¶ 43. We will not reweigh the evidence or the jury's credibility findings on appeal. *In re Commitment of Montanez*, 2020 IL App (1st) 182239, ¶ 65 (citing *Fields*, 2014 IL 115542, ¶ 27).

¶ 21    Respondent does not dispute that he was convicted of a sexually violent offense and that he suffers from a qualifying mental disorder. He argues the State did not prove the third element required by the Act: that his mental disorder makes it substantially probable that he will engage in acts of sexual violence. He contends that various estimates of his percentage risk of recidivism were all well under 50% and thus cannot meet the threshold of "much more likely than not." We disagree.

¶ 22    The Act does not require a particular actuarial score or statistic to uphold a jury's finding that a person is substantially probable to reoffend. *Montanez*, 2020 IL App (1st) 182239, ¶ 76. This court has explicitly rejected the proposition that the State must prove a recidivism likelihood above 50% to meet this standard. *In re Commitment of Haugen*, 2017 IL App (1st) 160649, ¶¶ 23-25. It is squarely within the province of the jury to evaluate the evidence of respondent's probability to reoffend, and we will not reweigh the evidence or substitute our judgement for that of the jury. *Id.* ¶ 25.

¶ 23    Here, Dr. Arroyo and Dr. Louck Davis both reviewed respondent's criminal, disciplinary, and medical records and conducted thorough evaluations of respondent, which included the use of actuarial risk assessment tools and consideration of dynamic risk factors. They agreed that the 1997 murder was sexually motivated and that respondent's diagnoses of paraphilic disorder, antisocial personality disorder, and substance use disorder together qualified as a mental disorder

under the Act. They testified that, based on their evaluations, it was much more likely than not that respondent would commit further acts of sexual violence if released. Respondent offered no contrary opinion. A rational factfinder presented with this uncontroverted evidence could conclude that respondent's mental disorder makes him substantially probable to engage in acts of sexual violence and thus that he meets the criteria of an SVP. See *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 602-03 (2007) (upholding jury's finding that respondent was an SVP on the basis of expert testimony).

¶ 24    Respondent nevertheless argues that the experts did not properly account for his age, past 60 years old, as a protective factor, and that the fact he has not reoffended in custody shows he is not dangerous. However, both doctors explained they did not consider age as a separate protective factor because respondent's actuarial scores already accounted for the reduced risk after age 60. Regarding the fact that respondent has not reoffended in custody, we note that the State can satisfy its burden absent overt sexual acts in a controlled environment. See *Gavin*, 2019 IL App (1st) 180881, ¶ 38. Moreover, both experts testified that they had considered respondent's age and behavior in custody in reaching their opinions. These issues were thus explored before the jury, who weighed the expert testimony and found respondent remained at risk of reoffending. We will not reweigh the evidence or substitute our judgement for that of the jury. *Haugen*, 2017 IL App (1st) 160649, ¶ 25.

¶ 25    For the reasons stated above, we affirm the judgment of the circuit court.

¶ 26    Affirmed.